UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICHAEL ANGELO BURNETT,

                Plaintiff,

v.

WENDY C. LANE, et al.,

                Defendants.

_____/

Case No. 2:24-cv-200

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 6.)

Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2); however, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).  Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).  That means payment should precede preliminary review pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c), which the Court is required to conduct prior to the service of the complaint.  *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to enter an opinion, order, and judgment denying Plaintiff leave to proceed *in forma pauperis* and dismissing this action without prejudice.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action.  Further, Plaintiff has not paid the $405.00 civil action filing

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

fees applicable to those not permitted to proceed *in forma pauperis*.[2]  Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).  Because this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g), Plaintiff's motion for temporary restraining order (ECF No. 3) will be denied as moot.

## Discussion

The PLRA amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the United States Court of Appeals for the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.*  For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b).  The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit.  *Id.* at 1288.

---

[2] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal.  The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury."  The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan.  In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim.  *See* Op. & J., *Burnett v. Marschke et al.*, No. 2:09-cv-225 (W.D. Mich. Feb. 5, 2010), (ECF Nos. 6, 7); Op. & J., *Burnett v. Hofbauer et al.*, No. 2:09-cv-192 (W.D. Mich. Dec. 2, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Caruso et al.*, No. 2:09-cv-180 (W.D. Mich. Oct. 8, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Hill et al.*, No. 2:09-cv-39 (W.D. Mich. Mar. 6,

2009), (ECF Nos. 8, 9); Op. & Order, J., *Burnett v. Caruso et al.*, No. 2:08-cv-168 (W.D. Mich. Jan. 5, 2009), (ECF Nos. 15, 16).  In addition, Plaintiff has been denied leave to proceed *in forma pauperis* under the three-strikes rule in numerous cases.  All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996, and all of the dismissals constitute "strikes" under the standard articulated by the Sixth Circuit in *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024).

As explained below, Plaintiff's allegations in the present action do not fall within the "imminent danger" exception to the three-strikes rule.  28 U.S.C. § 1915(g).  The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013).   A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints.  *Id.*   Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations.  *Id.*

Plaintiff is currently incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  The events about which he complains occurred at that facility, Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan, and Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.  (*See* Compl., ECF No. 1, PageID.2–5.)  Plaintiff sues the following IBC officials: Assistant Resident Unit Supervisor Wendy C. Lane, Correctional Officer Unknown Cuellar, Correctional Officer Unknown Wiborn, and Correctional Officer Unknown Banister.  (*Id.*, PageID.2.)  Plaintiff also sues the following LCF officials: Warden Bryan Morrison, Lieutenant Unknown Taggei, Lieutenant Unknown Borsi (identified as Unknown Boris on the docket for this case), Lieutenant Unknown Carter, Sergeant Unknown Hudson, Sergeant K. Garrett, Sergeant Unknown Mckinbin, Sergeant Unknown Cook, Sergeant Unknown Clemons, Sergeant Unknown Wright, Sergeant Unknown Burrow, Correctional Officer Unknown Mitchie #1, Correctional Officer Unknown Mitchie #2, Correctional Officer Unknown Stigler, and Grievance Coordinator Jennifer Rohrig.  (*Id.*, PageID.2–4.)  Finally, Plaintiff sues URF Warden James Corrigan, and Unknown Parties, named

as Correctional Officers Jane Does #1–45 from IBC, LCF, and URF. (*Id.*, PageID.4–5.)

In Plaintiff's complaint, he alleges that from 2019 through November 21, 2024, Defendants Lane, Cuellar, Wiborn, Banister, Morrison, Taggei, Borsi, Carter, Hudson, Garrett, Mckinbin, Cook, Clemons, Wright, Burrow, Mitchie #1, Mitchie #2, Stigler, Rohrig, Corrigan, and Does #1–45 "agreed to rape and murder Plaintiff by slowly poisoning him with human feces."[3]  (*Id.*, PageID.5.)  Plaintiff claims that "the sexual assaults and poisoning with human feces were recorded on the personal protection devices . . . ('PPDs') system."  (*Id.*)  Plaintiff alleges that "the assaults happen everyday and on all three work shifts."  (*Id.*)  Further, Plaintiff alleges that Defendants Morrison and Corrigan, both of whom are Wardens, "gave their tacit authorization to their officers to conduct the assaults" and "approved of their officers['] misuse of force and sexual assaults[] because after being placed on notice by Plaintiff's step II grievance appeals that were responded to by them, no reasonable action was taken by them to stop the assaults."  (*Id.*, PageID.5–6.)  Additionally, Plaintiff claims that Defendant Rohrig "agreed with prison officials at [LCF] to rape and murder Plaintiff" and that Rohrig "used her position as grievance coordinator to prevent an investigation into Plaintiff's grievance allegations."  (*Id.*, PageID.6.)

Plaintiff claims that "Defendants are encouraging each other everyday to assault Plaintiff," and "the assaults are ongoing with no end in[] sight."  (*Id.*)  Further,

---

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

Plaintiff claims that he continues to suffer from "pain, bleeding, and swelling as a result of being sexually assaulted, fear [sic], mental anguish and anxiety." (*Id.*) Plaintiff also "continue[s] to suffer nausea, vomiting, abdominal and chest pain, esophagitis and increase[d] risk of esophageal cancer as [a] result of the slow poisoning with human feces." (*Id.*)

As an initial matter, with respect to the LCF and IBC Defendants, Plaintiff fails to show that he is *presently* in imminent danger from these Defendants because he is no longer incarcerated at LCF and IBC. Instead, Plaintiff was incarcerated at URF when he filed the instant complaint. (*See id.*, PageID.1–2.) Therefore, as to the LCF and IBC Defendants, any alleged danger occurred in the past, and the "assertion that [Plaintiff] faced danger in the past is insufficient to invoke the exception." *Vandiver*, 727 F.3d at 585 (citations omitted).

Furthermore, although in the present case, Plaintiff does not indicate how the alleged daily rapes and forced feeding of feces occurred, Plaintiff claims that "the sexual assaults and poisoning with human feces were recorded on the personal protection devices . . . ('PPDs') system." (Compl., ECF No. 1, PageID.5.)[4] Plaintiff's

---

[4] In a case filed in October of 2024, Plaintiff likewise alleged that he had been subjected to alleged daily rapes and forced feeding of feces. In the October 2024 case, Plaintiff also did not indicate how the alleged daily rapes and forced feeding of feces had occurred. *See* Op., *Burnett v. Washington*, No. 2:24-cv-180 (W.D. Mich. Nov. 13, 2024), (ECF No. 5, PageID.27). In that case, "as the Court ha[d] concluded in many of Plaintiff's prior cases," the Court concluded "that Plaintiff's present allegations of imminent danger [were] largely 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible,' *Rittner*, 290 F. App'x at 79[8], and d[id] not support a conclusion that Plaintiff [was] in imminent danger of serious physical injury." *Id.*, (ECF No. 5, PageID.31). The Court also concluded that Plaintiff had "failed to allege facts to show the requisite nexus between any alleged danger and the sole named

allegations regarding forcible consumption of human waste and alleged daily rapes have been some of Plaintiff's "go to" allegations to avoid the "three strike" consequences of previously filing meritless lawsuits, and Plaintiff has previously alleged that the "personal protection devices system" or a similar "system" was involved in his forcible consumption of human waste and alleged daily rapes.  For example, in three cases filed in 2020, Plaintiff alleged that various officials used the prison "Safety System" to deliver feces and urine directly into Plaintiff's mouth over a period of years.  *See Burnett v. Macauley et al.*, No. 1:20-cv-1116 (W.D. Mich.); *Burnett v. Wilborn et al.*, No. 1:20-cv-1161 (W.D. Mich.); *Burnett v. Washington*, No. 1:20-cv-1173 (W.D. Mich.).[5]  In at least some of those cases, Plaintiff admitted that he suffered from paranoia and schizophrenia.  The Court ultimately determined that Plaintiff's allegations of imminent danger in all three cases were irrational and clearly baseless, and, therefore, did not support a conclusion that Plaintiff was in

---

Defendant," Defendant Washington, in the action. *Id.*, (ECF No. 5, PageID.31–32). In light of this, the Court concluded that Plaintiff was barred from proceeding *in forma pauperis* under Section 1915(g) in that action. *See id.*, (ECF No. 5, PageID.32).

[5] Plaintiff's allegations are also similar to allegations in complaints he filed in the United States District Court for the Eastern District of Michigan. *See Burnett v. Jenkins et al.*, No. 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility and Ionia Correctional Facility delivered feces and urine into his mouth using the prison safety systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility used the Safety System to deliver feces and other bodily fluids into his mouth); *Burnett v. Herron et al.*, No. 5:18-cv-12471 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility put feces into his mouth at least three times a week). Additionally, Plaintiff's allegations are similar to allegations in the complaint that he filed in *Burnett v. Corrigan et al.*, No. 2:22-cv-129 (W.D. Mich.), in which he alleged that officials at Chippewa Correctional Facility sprayed human waste in his face and mouth using an industrial-sized spray bottle.

imminent danger of serious physical injury within the meaning of § 1915(g).  *See Vandiver*, 727 F.3d at 585; *Rittner*, 290 F. App'x at 798.

Similarly, in a case filed in 2023, Plaintiff presented nearly identical allegations to those presented in the above-discussed 2020 cases; however, Plaintiff alleged that Defendants at LCF used "personal protection device computer systems" (rather than the prison "Safety System") "on which they can 'walk and talk with officers and Plaintiff,' . . . 'assault Plaintiff with officers' waste' and . . . 'shout[] racial slurs and profanity in Plaintiff's ear twenty-four hours a day.'"  Op., *Burnett v. Morrison et al.*, No. 1:23-cv-1091 (W.D. Mich. Nov. 21, 2023), (ECF No. 6, PageID.65) (quoting Plaintiff's complaint).  As the Court had concluded in the 2020 cases, in the 2023 case, the Court concluded that "Plaintiff's present allegations of imminent danger [were] 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible' and d[id] not support a conclusion that Plaintiff [was] in imminent danger of serious physical injury."  *Id.*, (ECF No. 6, PageID.65–66) (citation omitted).

And, recently in another case, Plaintiff alleged that corrections officials at LCF "programmed the personal protection device computer system to commit the physical acts of rape, by programming the device to grip and gyrate Plaintiff's hips and to repeatedly penetrate Plaintiff's [private area]."  *Burnett v. Washington*, No. 1:24-cv-155, 2024 WL 1340551, at *3 (W.D. Mich. Mar. 29, 2024).  The Court again concluded "that Plaintiff's present allegations of imminent danger [we]re 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible' and d[id] not support a

conclusion that Plaintiff [wa]s in imminent danger of serious physical injury." *Id.* (citation omitted).

In the present case, Plaintiff does not indicate how the alleged daily rapes and forced feeding of feces occurred; however, as Plaintiff has done in his prior cases, Plaintiff again includes allegations regarding the "personal protection devices system." Specifically, in this case, rather than claiming that the "personal protection devices system" was used to carry out the daily rapes and forced feeding of feces, Plaintiff now claims that "the sexual assaults and poisoning with human feces were recorded on the personal protection devices . . . ('PPDs') system." (Compl., ECF No. 1, PageID.5.) However, besides Plaintiff's allegation about how the "personal protection devices system" is now being used, Plaintiff's allegations of alleged imminent danger are otherwise analogous to his allegations in the above-discussed cases. As the Court has concluded in many of Plaintiff's prior cases, the Court concludes that Plaintiff's present allegations of imminent danger are "fantastic or delusional and rise to the level of irrational or wholly incredible," *Rittner*, 290 F. App'x at 79, and do not support a conclusion that Plaintiff is in imminent danger of serious physical injury.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis*

pursuant to the three strikes provision of § 1915(g).").  Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.  Because this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g), Plaintiff's motion for temporary restraining order (ECF No. 3) will be denied as moot.

## Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis* and will deny Plaintiff's motion for temporary restraining order (ECF No. 3) as moot.  The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[6]

---

[6] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:  December 26, 2024            /s/ Phillip J. Green
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge